**Ralph E. ROGERS, Plaintiff,**

v.

**Norman CARVER, Defendant.**

**Civ. A. No. 86–738–S.**

United States District Court,
D. Massachusetts.

Dec. 9, 1986.

Donald A. Harwood, P.J. Piscitelli, Brockton, Mass., for plaintiff.

Frances L. Robinson, Asst. Atty. Gen., Criminal Bureau, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER ON RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS

SKINNER, District Judge.

In January, 1966, a Suffolk County Massachusetts jury convicted the petitioner, Ralph Rogers, of the first degree murder of a woman named Campbell. The Supreme Judicial Court affirmed the conviction in the following year. *Commonwealth v. Rogers*, 351 Mass. 522, 222 N.E. 2d 766, *cert. denied sub. nom., Rogers v. Massachusetts*, 389 U.S. 991, 88 S.Ct. 484, 19 L.Ed.2d 483 (1967). Petitioner has since filed four petitions for habeas relief. His first petition was dismissed on October 1, 1969 for failure to exhaust state remedies. On January 14, 1971, the District Court denied on the merits a second petition challenging the admission at trial of statements made by Rogers at the time of his arrest.

Rogers filed his third petition for writ of habeas corpus on April 27, 1983. I dismissed that petition because he had failed to exhaust his state remedies as to four of his seven claims. Rogers returned his cause to state court, where a judge of the Massachusetts Superior Court and a single justice of the Massachusetts Supreme Judicial Court denied his motion for a new trial.

Rogers then filed this petition for writ of habeas corpus (the "petition"). Rogers claims that seven aspects of the jury instructions, both individually and in the aggregate, violated the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. The Commonwealth has moved to dismiss Ground Seven of the petition on the grounds that it is an abuse of the writ, and Grounds One and Five on the basis that they are barred by adequate and independent state procedural grounds. The Commonwealth also moves to dismiss all claims on the merits.

*Ground Seven*

In Ground Seven, Rogers challenges the judge's instruction that "prima facie, all confessions are voluntary." Rogers argues that despite the judge's further instruction that his determination of voluntariness was not binding on the jury, the judge's statement unduly influenced the jury. The Commonwealth contends that because Rogers raised an almost identical issue in his second habeas petition, he abuses the writ by raising it in this petition.

Rule 9(b) of the Rules Governing Section 2254 Cases provides:

> *Successive Petitions.* A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits, or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

28 U.S.C. foll. § 2254.

Once the government alleges that a habeas corpus petition is an abuse of the writ under Rule 9(b), the prisoner bears the burden of answering the allegation and proving he has not abused the writ.

"Abuse of the writ" is an affirmative defense that must be pleaded by the government. *Sanders v. United States*, 373 U.S. 1, 10, 83 S.Ct. 1068, 1074, 10 L.Ed.2d 148 (1963); *Price v. Johnston*, 334 U.S. 266, 292, 68 S.Ct. 1049, 1053, 92 L.Ed. 1356 (1948); Advisory Committee

Note to Rule 9(b), reprinted following 28 U.S.C.A. § 2254. Once a particular abuse has been alleged the prisoner has the burden of answering and of proving that he has not abused the writ. *Price v. Johnston,* 334 U.S. at 292, 68 S.Ct. at 1063. *See also Potts v. Zant,* 638 F.2d 727, 747 (5th Cir.), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981); *Mays v. Balkcom,* 631 F.2d 48, 51 (5th Cir.1980).

*McLaughlin v. Gabriel,* 726 F.2d 7, 10 (1st Cir.1984).

The government has clearly pleaded that Ground Seven is an abuse of the writ. Rogers has not responded to this pleading; in fact, Rogers' subsequent submissions do not even mention Ground Seven. It appears from the papers before me that Rogers raised the same or similar issues in his second habeas petition, and there are no new facts justifying reconsideration of the issue. Accordingly, the Commonwealth's motion to dismiss Ground Seven is ALLOWED.

*Grounds One and Five*

In Ground One of the petition, Rogers contends that in his instructions, the trial judge improperly referred to society's generalized interest in convicting those guilty of crimes. In Ground Five, Rogers argues that the trial judge's statements as to the reliability of circumstantial evidence unfairly prejudiced him. Rogers did not raise either objection at trial. The Commonwealth maintains that its contemporaneous objection rule bars consideration of those issues on appeal, and that I am therefore barred from considering the issues in these proceedings.

■ Generally, I may not hear a petitioner's constitutional challenge if the state has adequate and independent procedural grounds for refusing to hear the challenge on appeal. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, *rehg. denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed. 2d 163 (1977). It is well settled that failure to comply with a state contemporaneous objection rule, which requires a defendant to object to trial errors when they occur, constitutes an adequate and independent

state procedural ground precluding habeas review. *See id.* Where a petitioner fails to comply with a contemporaneous objection rule, the petitioner may not raise the objection on habeas review unless (a) the state itself would exempt the petitioner from its general rule and hear the objection, or (b) the petitioner can show cause for failing to raise the claim and can demonstrate that the failure caused him actual prejudice. *Id.* 433 U.S. at 87, 97 S.Ct. at 2506; *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 *reh'g denied,* 456 U.S. 1001, 102 S.Ct. 2286, 73 L.Ed.2d 1296, *reh'g denied,* 457 U.S. 1141, 102 S.Ct. 2976, 73 L.Ed.2d 1361 (1982); *Reed v. Ross,* 468 U.S. 1, 8–11, 104 S.Ct. 2901, 2906–08, 82 L.Ed.2d 1 (1984).

■ Rogers did not raise Ground Five at trial. On Rogers' motion for a new trial, the Superior Court ruled that the contemporaneous objection rule precluded him from collaterally attacking his conviction on the basis of Ground Five. Justice Liacos did not explicitly discuss Ground Five but appears to have viewed it as one of those claims that Rogers should have raised at trial. Since the Commonwealth courts have barred litigation of Ground Five on adequate and independent state grounds, Rogers may raise this issue now only if he can show both cause for failing to raise it at trial and actual prejudice from that failure. *See Wainwright,* 433 U.S. at 86–87, 97 S.Ct. at 2506–07; *Engle,* 456 U.S. at 129–134, 102 S.Ct. at 1572–75; *Reed,* 468 U.S. at 8–11, 104 S.Ct. at 2906–08. I need not determine whether Rogers had cause for not raising Ground Five at his trial because he has failed to demonstrate that the error alleged in Ground Five caused him actual prejudice.

To demonstrate that the error alleged in Ground Five caused him "actual prejudice," Rogers must show not only that the particular jury instruction was incorrect, but also that it was so egregiously unconstitutional as to infect the entire trial with unconstitutionality. *See Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *U.S. v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816, *reh'g. denied,*

456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982). This standard is more demanding than that imposed on defendants challenging jury instructions on appeal. The standard has been characterized by the Supreme Court as follows:

> Recently, for example, Justice Stevens, in his opinion without dissent in *Henderson v. Kibbe*, summarized the degree of prejudice we have required a prisoner to show before obtaining collateral relief for errors in the jury charge as " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.' " 431 U.S., at 154 [97 S.Ct. at 1736] (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 147, [94 S.Ct. 396, 400, 38 L.Ed.2d 368] (1973)). We reaffirm this formulation, which requires that the degree of prejudice resulting from instruction error be evaluated in the total context of the events at trial. As we have often emphasized: "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten, supra,* at 146–147 [94 S.Ct. at 400–01] (citations omitted). Moreover, "a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction." *Id.,* at 147, 94 S.Ct. at 400.

*Frady*, 456 U.S. at 169, 102 S.Ct. at 1595.

Rogers has failed to carry his burden of showing that the error alleged in Ground Five infected the entire trial with unconstitutionality. Rogers' Ground Five objects to only one sentence in the jury instructions, wherein the judge stated: "[t]he advantages [of circumstantial evidence] are, that, as the evidence commonly comes from several witnesses and different sources, the chain of circumstances is less likely to be falsely prepared and arranged, and falsehood and perjury are more likely to be detected and fail of their purpose." This single sentence is balanced by the immediately subsequent statement that "[t]he disadvantages are, that a jury has not only to weigh the evidence of facts, but to draw just conclusions from them; in doing which, they may be lead by prejudice or partiality, or by want of due deliberation or sobriety of judgment, to make hasty and false deductions, a source of error not existing in the consideration of positive evidence." This and other statements in the judge's charge lead me to conclude that in the context of the overall charge, this jury instruction caused Rogers no actual prejudice. Any error in the judge's attempt to point out the advantages and disadvantages of circumstantial evidence are trivial in light of the generally fair tone of the jury instructions. Rogers has failed to show that he was actually prejudiced by the failure to raise the objection set forth in Ground Five. Accordingly, the Commonwealth's motion to dismiss Ground Five is ALLOWED.

■ Rogers also failed to raise Ground One at trial. Ground One is not barred, however, because the Commonwealth itself allowed Rogers to raise this objection in his motion for a new trial. *See generally Connecticut v. Johnson*, 460 U.S. 73, 80 n. 8, 103 S.Ct. 969, 973 n. 8, 74 L.Ed.2d 823 (1983). Justice Liacos of the Supreme Judicial Court dealt with Ground One at some length in his Memorandum and Order dated January 23, 1986. His opinion suggests that Rogers was excused from Massachusetts' contemporaneous objection rule because Ground One is based on constitutional principles not clearly articulated until after his verdict was affirmed on appeal. Because Massachusetts has permitted Rogers to litigate Ground One in a collateral proceeding, Rogers may raise the issue before this court.

### The Merits: Grounds One–Four, Six

The Commonwealth moves to dismiss all of Rogers' remaining claims on the merits.

Rogers argues that his petition should be granted for two reasons: first, errors in the judge's jury instructions, either individually or in the aggregate, undermined the standard of proof beyond a reasonable doubt and impermissibly shifted the burden of proof to Rogers (Grounds One, Three, Four and Six); and, second, the judge's instruction that the jury not consider the question of manslaughter violated his right to due process (Ground Two).

"[T]he Due Process Clause protects [an] accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *In Re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed. 2d 368 (1970), and jury instructions which shift the burden of proof to a defendant or which "vitiate the requirement that guilt be proven beyond a reasonable doubt" are unconstitutional. *Bumpus v. Gunter*, 635 F.2d 907, 909 (1st Cir.1980), *cert. denied*, 450 U.S. 1003, 101 S.Ct. 1714, 68 L.Ed.2d 207 (1981); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Winship*, 397 U.S. at 364, 90 S.Ct. at 1072. Rogers points to four errors in the jury instructions which allegedly shifted the burden of proof to him and vitiated the reasonable doubt standard.

■ Rogers in Ground One claims that the judge's references to society's general interest in convicting the guilty unconstitutionally undermined the reasonable doubt standard and shifted the burden of proof onto his shoulders. I disagree. In assessing the constitutionality of jury instructions, I must examine them in the context of the overall jury charge.

[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. While this does not mean that an instruction by itself may never rise to the level of constitutional error, it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.

*Cupp v. Naughten*, 414 U.S. 141, 146–147, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973) (citations omitted).

The judge's statements regarding the importance of convicting the guilty are in each case paired with discussions of the importance of *not* convicting the innocent, of exercising impartiality and courage, and of following the reasonable doubt standard. When viewed in context, the statements appear to be an attempt to illustrate the competing considerations the jury was required to balance. Because the judge's statements regarding society's interest in convicting the guilty were adequately balanced by countervailing statements and by statements as to the fundamental importance of the standard of reasonable doubt, they are not unconstitutional.

■ Rogers objects in Ground Three to the judge's statement equating reasonable doubt with that degree of certainty upon which the jurors would act in the important affairs of their lives. In his instructions, the judge stated "circumstantial evidence is a kind of evidence upon which we all are accustomed to act in the ordinary affairs of life." He went on to explain that reasonable doubt required the same degree of certainty as would justify the jurors in acting in the "important affairs" of life. The First Circuit has explicitly held that jury instructions equating reasonable doubt with the degree of certainty one would exercise in the "major affairs" of one's life are constitutional. *See Bumpus*, 635 F.2d at 912–913. There is no significant difference between the instruction challenged by Rogers and that upheld by the First Circuit in *Bumpus*.

Rogers relies upon the Massachusetts case of *Commonwealth v. Ferreira*, 373 Mass. 116, 364 N.E.2d 1264 (1977). However, in *Ferreira*, the Supreme Judicial Court did not find unconstitutional the general comparison between important life decisions and the reasonable doubt standard.

Rather, it objected to the use of specific examples to illustrate that analogy. *Ferreira,* 364 N.E.2d at 1272–1273.

▆ Similarly, while the judge probably should not have instructed the jury that acts such as fleeing the scene of a crime may be considered an "admission" of guilt rather than evidence of consciousness of guilt, this single sentence does not shift the burden of proof onto defendant or vitiate the reasonable doubt standard (Ground Four). In fact, the judge clarified what he meant by the term admission in the immediately subsequent discussion.

> However, common fairness insists that before you draw an inference of guilt of a crime of killing, you should be satisfied that these acts or words were at least a part of the motive or cause of the consciousness of guilt which caused these acts of flight or change of name or words....
>
> Does the speech of the defendant on such and such an occasion after the crime indicate that his mind was then conscious of having committed a crime? If they do, then the probative effect of such consciousness must be determined by you, the Jury.
>
> You must remember that consciousness of guilt depends upon proof of established facts.
>
> Therefore, if the Commonwealth has satisfied you of such established fact, from which you find consciousnmess of guilt on the part of the defendant, then you may consider such a fact in connection with all the other facts established, if any, as bearing upon his guilt of the crime set forth in the indictment.

This discussion instructs the jurors that before drawing an inference of guilt from Rogers' "admission", they must be satisfied that the statement or acts stemmed from "a consciousness of guilt" and that it was up to the jury to determine, based on all the facts, whether such a consciousness

existed and what its probative effect might be. In context, the "admission" language does not amount to a constitutional violation.

▆ In Ground Six, Rogers claims that the jury instructions regarding malice and alibi improperly shifted the burden of proof. With regard to the malice instruction, Rogers challenges the following purported statement:

> Proof beyond a reasonable doubt is sufficient without proof of motive. (Volume 8, p. 1041.) Malice has been defined by a former imminent justice of our Court: "not only hatred and anger and revenge, but every other unlawful and unjustifiable motive." It is not confined to ill will toward one or more individual persons, but is intended to denote any action flowing from a wicked and corrupt motive. Motive is what; it is that which impels the action: and if the action is unlawful, the motive is malicious in the eyes of the law." (Volume 8, pgs. 1048–49.) ... the crime of murder imples atrocity and cruelty of the guilty party. (p. 1045.)[1]

I find nothing objectionable in these instructions. Rogers has strung together three widely separated statements in order to construct this allegedly objectionable charge. The various sentences are spread over eight pages of the jury instructions. Rogers quotes them out of order. When the statements are returned to their original context, they become thoroughly unobjectionable.

The first sentence, that "proof beyond a reasonable doubt is sufficient without proof of motive", does not affect the burden of proof. It is a straightforward explanation of the law that the prosecution may prevail without proving the defendant's motive for committing a crime.

Four pages later, the judge states: "the crime of murder implies atrocity and cruelty of the guilty party." This statement, like many others cited by Rogers, is reason-

---

1. Rogers also alleges that the trial judge instructed the jury that "the crime of murder, gentlemen, always implies atrocity or cruelty in the guilty party." Rogers' memorandum contains no citation for this statement and I found no such statement in my examination of the excerpts of the jury instructions provided by the parties. I therefore do not find it necessary to treat this aspect of the petitioner's allegations.

able when viewed in the context of the surrounding instructions. The judge's full statement runs as follows:

Also, an enactment of the Legislature, in 1858, provided for different degrees of murder and established the law that a murder committed with deliberate premeditated malice aforethought or a murder committed while attempting to commit or actually committing a crime punishable with death or life imprisonment or a murder committed with extreme atrocity or cruelty should be punished more severely than murder in the second degree.

This Statute doesn't change the definition of murder. It merely provides the definite punishment for murder committed under circumstances enumerated in the Statute.

The crime of murder implies atrocity and cruelty of the guilty party. But there are degrees of criminality in this respect, even in the wrongful malicious taking of a human life.

And in order to justify a finding of murder in the first degree by reason of its perpetration through extreme atrocity or cruelty, it requires that something more than ordinary understanding of the crime shall exist. Something, I am implying, more than the ordinary criminality, manifesting a degree of atrocity or cruelty which must be considered as aggravated or extreme.

As a whole, these paragraphs explain to the jurors that to find Rogers guilty of first degree murder on the grounds of extreme atrocity or cruelty, they had to find atrocity or cruelty beyond that normally implied by any unexcused killing. The judge is clearly distinguishing between the atrocity and cruelty which the average person could attribute to *any* unexcused killing, and the extreme atrocity and cruelty that would justify a finding of first degree murder. In context, therefore, the challenged statement is wholly unobjectionable.

Rogers also challenges the instruction that

Malice has been defined by a former imminent [sic] justice of our Court: "not only hatred and anger and revenge, but every other unjustifiable motive." It is not confined to ill will toward one or more individual persons, but is intended to denote any action flowing from a wicked and corrupt motive. Motive is what: it is that which impels the action: and if the action is unlawful, the motive is malicious in the eyes of the law.

This statement is merely one part of an explanation that goes on for more than three full pages. The statement itself is innocuous enough: it explains only that malice is that which is unlawful, a perhaps tautological but not unconstitutional statement. Moreover, the instructions as a whole make clear that the Commonwealth's case for a first degree murder verdict rested primarily upon the extreme atrocity and cruelty of the murder and not upon the grounds of malice aforethought. It is therefore unlikely that any error in the malice instructions was prejudicial to Rogers' constitutional rights.

■ Rogers objects as well to the trial judge's statements regarding his alibi evidence. In his instructions, the trial judge stated:

Now, an alibi in the law, gentlemen, means substantially the same as it means in ordinary mundane language. It is a defense often attempted by contrivance, subornation, and perjury; the proof therefore offered to sustain it is to be subjected to a rigid scrutiny because without attempting to control or rebut the evidence of fact sustaining the charge it attempts to prove affirmatively another fact, wholly inconsistent with it; and this defense is equally available if satisfactorily established to avoid the force of positive as circumstantial evidence.

In considering the strength of the evidence necessary to sustain this defense, it is obvious that all testimony the accused was in another place at the time of the offense is in direct conflict with that which contends he was at the place the crime was committed and actually committed it, in this conflict of evidence

whatever tends to support the one tends in the same degree rebut the other.

And it is, therefore, for the Jury to decide where the truth lies.

The Massachusetts Supreme Judicial Court has stated that it is unconstitutional error to shift the burden of proof as to alibi evidence to a defendant. *Commonwealth v. McLeod,* 367 Mass. 500, 502, 326 N.E.2d 905, 906 (1975). However, it has also made clear that statements such as that made by the judge are constitutional if hedged with adequate reminders that the prosecution bore the burden of proof as to alibi evidence. *See Commonwealth v. Leaster,* 362 Mass. 407, 416, 287 N.E.2d 122, 127–128 (1972). I agree with Justice Liacos' conclusion that "the jury instructions contain abundant mitigating language, stating plainly that the Commonwealth bears the burden of proving its case beyond reasonable doubt." While alibi instructions of this tenor are probably best avoided, the overall charge concerning the alibi evidence is not unconstitutional.

Individually, none of the challenged jury instructions shifts the burden of proof to Rogers or impermissibly undermines the standard of proof beyond a reasonable doubt. Nor do the instructions constitute reversible error in the aggregate. The jury instructions are spiked with explanations of reasonable doubt and reminders that the Commonwealth bears the burden of proof. In light of the overall instructions, there is no unconstitutional error in the judge's instructions to the jury.

In addition to arguing that the jury instructions impermissibly shifted the burden of proof to the defendant and undermined the standard of proof beyond a reasonable doubt, Rogers contends in Ground Two that the judge violated the Constitution when he instructed the jury that the evidence could not sustain a manslaughter verdict. I disagree. "It is well established that where evidence in a murder prosecution is such that a jury could find a defendant guilty of manslaughter rather than murder, it is reversible error to refuse to give such an instruction.... A trial judge is not required, however, to charge on an hypothesis which is not supported by evidence." *Commonwealth v. Johnson,* 379 Mass. 177, 180, 396 N.E.2d 974, 976 (1979) (quoting *Commonwealth v. Caine,* 366 Mass. 366, 374, 318 N.E.2d 901, 908 (1974)). "Voluntary manslaughter is a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth v. Zukoski,* 370 Mass. 23, 28, 345 N.E.2d 690, 694 (1976) (quoting *Commonwealth v. Soaris,* 275 Mass. 291, 299, 175 N.E. 491, 494 (1921)). *See Commonwealth v. Burke,* 376 Mass. 539, 542, 382 N.E.2d 192, 194 (1978).

A manslaughter instruction was required only if there was sufficient evidence to support a reasonable belief that Campbell's acts would have produced "in an *ordinary person* such a state of passion, fear, fright, nervous excitement as would eclipse his capacity for reflection or restraint." *Commonwealth v. Walden,* 380 Mass. 724, 405 N.E.2d 939, 944 (1980); *see also Commonwealth v. DeArmas,* 490 N.E.2d 433 (1986); *Commonwealth v. Amaral,* 389 Mass. 184, 450 N.E.2d 142 (1983). But no ordinary person would have been provoked by a slap and some scratches to beat a woman so severely as to break her nose, jaw and hyoid bone, bruise her eyes, face and body and cause internal hemorrhaging and then, while she still lived, incise her from navel to crotch and insert a ginger ale bottle into the incision. Failure to issue manslaughter instructions in such a case is not reversible error.

Accordingly, respondent's motion to dismiss on the merits Grounds One, Two, Three, Four and Six of the petition for writ of habeas corpus is ALLOWED.

*Conclusion*

Respondent's Motion to Dismiss the Petition for Writ of Habeas Corpus is ALLOWED as to all grounds.