Ralph E. ROGERS,
Petitioner, Appellant,

v.

Norman CARVER, etc.,
Respondent, Appellee.

No. 87–1067.

United States Court of Appeals,
First Circuit.

Heard Oct. 7, 1987.

Decided Nov. 17, 1987.

Donald A. Harwood for petitioner, appellant.

Natalea Skvir, Asst. Atty. Gen., Criminal Bureau. with whom James M. Shannon, Atty. Gen., and A. John Pappalardo, Deputy Atty. Gen., Chief, Criminal Bureau, were on brief for respondent, appellee.

Before BOWNES, Circuit Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

* Of the Second Circuit, sitting by designation.

TIMBERS, Circuit Judge:

Ralph E. Rogers ("appellant"), a state prisoner serving a life term for first degree murder, appeals from a judgment entered December 9, 1986 in the District of Massachusetts, 674 F.Supp. 365, Walter J. Skinner, *District Judge*, dismissing his petition for a writ of habeas corpus on procedural grounds and on the merits. In his habeas petition, appellant challenges the jury instructions leading to his conviction.

On appeal, appellant claims (1) that the jury instructions undermined the reasonable doubt standard and impermissibly shifted the burden of proof to him; (2) that he was not procedurally barred from asserting that the jury instructions on circumstantial evidence included prejudicial statements despite his failure to raise this objection at trial since the omission was caused by attorney "neglect" rather than a "deliberate tactic"; and (3) that the instruction that the jury not consider manslaughter violated due process.

We hold that any errors in the jury instructions, when considered in context, were adequately explained so as not to rise to constitutional magnitude. We also hold that appellant failed to prove that the instruction on circumstantial evidence was so egregious as to overcome his failure to object to this instruction at trial. We further hold that appellant did abuse the writ by raising a claim against the judge's statement on the voluntariness of confessions. Finally, we hold that in comparing the severity of the injuries inflicted with the alleged slight provocation, a manslaughter instruction was not warranted.

We affirm.

### I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellant was found guilty of first degree murder of Patricia Campbell (the "victim") and was sentenced to life imprisonment. The Massachusetts Supreme Judicial Court affirmed the conviction, after plenary review under M.G.L. c. 278, § 33E.

*Commonwealth v. Rogers*, 351 Mass. 522, 222 N.E.2d 766, *cert. denied sub nom. Rogers v. Massachusetts*, 389 U.S. 991 (1967). Appellant currently is serving his sentence.

On November 6, 1964, the day of the murder, appellant met the victim sometime in the morning. They spent the day together. At about 5:30 p.m., appellant knocked on his neighbor's door. When the neighbor answered, he noticed blood on appellant's ear and hands and asked him what happened. Appellant replied that he had been in a fight. Appellant returned to his room. Shortly thereafter he left with his suitcase. He turned in his key and told the building manager he was vacating. A few minutes later, the manager went to check the condition of the room vacated by appellant and discovered the body of the victim. The victim's nose, jaw and hyoid bone were broken; her eyes, face and body were severely bruised; she was hemorrhaging internally; and there was a large incision in her abdomen likely made while she was still alive in which a quart-sized gingerale bottle was inserted.

Appellant was arrested ten days later. After initially giving a false name, he admitted his identity as well as beating the victim on the head, face and throat after they had argued; but he denied the mutilation. At trial, in contradiction to his confession, appellant testified that he went to a friend's house, having left the victim alone in his room. Appellant claimed that when he returned he discovered the victim's body, became frightened and left.

The instant appeal is the latest chapter in a somewhat lengthy procedural history. Appellant has filed four petitions for habeas relief. The first was dismissed by the district court on October 1, 1969 for failure to exhaust state remedies. The second, challenging the admission at trial of statements made by appellant at the time of his arrest, was denied by the district court on the merits on January 14, 1971. The third was dismissed by Judge Skinner for failure to exhaust state remedies as to four of the seven claims. Thereafter, on November 5, 1984, appellant filed a motion for a new

trial with the Suffolk Superior Court based on allegations that the jury instructions impermissibly shifted the burden of proof upon him. After a hearing, the motion was denied. Appellant was denied leave to appeal by the Massachusetts Supreme Judicial Court on January 23, 1986.

Appellant filed his fourth petition alleging that seven aspects of the jury instructions, individually and in the aggregate, violated due process. In a well reasoned opinion dated December 9, 1986, the district court dismissed the claims. Allegations that the jury instructions on circumstantial evidence were prejudicial were rejected since appellant's failure to raise that issue at trial was an independent state procedural ground precluding collateral review; and appellant did not meet his burden of proving prejudice. Allegations that the judge erroneously stated that all confessions should be deemed prima facie voluntary were rejected as an abuse of the writ. The court dismissed on the merits claims that the judge's jury instructions undermined the standard of proof beyond a reasonable doubt and impermissibly shifted the burden of proof to appellant. The court held that the evidence did not warrant a manslaughter instruction. From the judgment dismissing the fourth habeas petition appellant has taken the instant appeal.

## II.

■ We find that appellant's claim that warrants especially careful consideration is the claim that the district court erred in not finding that the cumulative impact of the errors in the jury instructions shifted the burden of proof to appellant and deprived him of due process. Appellant points specifically to the trial judge's references to society's interest in convicting the guilty; his statements concerning the alibi defense and malice and extreme atrocity and cruelty; his references to matters in the jurors' lives; and his statement on "admission" of guilt.

The due process clause of the Constitution requires the state in criminal prosecutions to prove guilt beyond a reasonable doubt. *In Re Winship,* 397 U.S. 358, 364

(1970). It is well settled that jury instructions that shift the burden of proof to the defendant or vitiate the reasonable doubt standard raise claims of constitutional proportions. *Sandstrom v. Montana,* 442 U.S. 510 (1979); *In Re Winship, supra; Bumpus v. Gunter,* 635 F.2d 907, 909 (1st Cir.1980).

In *Cupp v. Naughten,* 414 U.S. 141, 147 (1973), the Supreme Court reiterated a long established principle that, in determining the effect of a jury instruction on the validity of the conviction of a habeas petitioner, "a single instruction ... may not be judged in artificial isolation, but must be viewed in the context of the overall charge." This principle stems from a recognition that, not only is a challenged instruction one of many instructions, but that a judgment of conviction is the culmination of a trial encompassing the testimony of witnesses, argument of counsel, receipt of exhibits in evidence, as well as the judge's instructions to the jury. *Id.* In view of this, even if we might view certain parts of the instructions with askance were we sitting on direct review in a *federal* criminal case, the standard is quite different in reviewing a *state* proceeding pursuant to our habeas jurisdiction. The degree of prejudice required here is "not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe,* 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten, supra,* 414 U.S. at 146). Rather, the habeas petitioner has the burden of meeting a very high standard— "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten, supra,* 414 U.S. at 147. Moreover, on habeas review, a federal appellate court must accord the state trial court's factual findings "the presumption of correctness expressly required by 28 U.S.C. § 2254(d)." *Kuhlmann v. Wilson,* 477 U.S. 436, 459 (1986).

In the instant case, having reviewed the jury instructions according to this standard, we hold that, while the instructions as given were not ideal, the errors alleged did not rise to constitutional proportions.

Taken in context, the judge gave correct instructions on the reasonable doubt standard and correctly placed the burden of proof on the Commonwealth.

We now turn to certain specific aspects of the challenged jury instructions.

### A.

Appellant points to a number of different aspects of the instructions, both individually and cumulatively, that he claims vitiated the reasonable doubt standard and placed the burden of proof on him: (1) the references to society's interest in convicting the guilty; (2) the comparison of the reasonable doubt standard with the standard one would apply in making important decisions in daily life; (3) the emphasis on rigid scrutiny of alibi evidence; (4) the definition of malice which included the statement that malice is implied in deliberate cruel acts; (5) the statement that murder implies atrocity or cruelty; and (6) the comments regarding the significance of fleeing the scene of the crime.

Appellant claims that the judge's references to society's interest in convicting the guilty focused the jury's attention on the costs and dangers to society if those accused are not convicted. We disagree. As the district court pointed out, in each case the judge adequately counterbalanced these statements. In assessing the challenged statements in the context of the entire charge, it is important to bear in mind that the judge used long-standing language on the reasonable doubt standard; he included a lengthy statement on the presumption of innocence; he instructed the jury that they were required to apply the reasonable doubt standard as he defined it; and he admonished the jury to exercise impartiality and to base their verdict only on the evidence. In context, we believe the judge's statements appropriately illustrated the competing interests that the jury was required to weigh.

### B.

Appellant further argues that the judge trivialized the Commonwealth's burden of proof by instructing that reasonable doubt should be compared with the standard one would apply in making important decisions in daily life. Specifically, appellant points to the judge's statement that the jury must return a guilty verdict "if it is established by the evidence in this case beyond a reasonable doubt to that degree of certainty upon which you would act in the important affairs of your life, that the prisoner is guilty of murder as charged in the indictment". We explicitly have upheld such instructions. *See Bumpus v. Gunter, supra,* 635 F.2d 901, 912–13 (1st Cir.1980). In *Bumpus,* the trial judge described the reasonable doubt standard as applying the same degree of certainty one would want to apply in deciding whether to undergo major heart surgery. While in *Bumpus* we observed that some courts have criticized a comparison of reasonable doubt in criminal cases with the standard jurors use to make significant decisions in their daily lives, we refused to hold the comparison to constitute constitutional error.

In support of his claim, appellant cites *Commonwealth v. Ferreira,* 373 Mass. 116, 364 N.E.2d 1264 (1977), in which the Massachusetts Supreme Judicial Court held that the challenged jury instructions constituted reversible error. In *Ferreira,* the judge not only compared the reasonable doubt standard to the certainty one would require in making "important decisions" affecting one's life, but he then gave examples of such important decisions. The judge's examples included whether to continue your education or to leave school to get a job; whether to get married or to stay single; or whether to buy a house or to continue to rent. It was these examples that the court held "understated and tended to trivialize the awesome duty of the jury to determine whether the defendant's guilt was proved beyond a reasonable doubt." 373 Mass. at 129, 364 N.E.2d at 1272.

The challenged instruction in the instant case falls far short of the one held to constitute reversible error in *Ferreira.* Here the judge's reference to important decisions was brief and general. It came only after a lengthy instruction on reason-

able doubt that cautioned the jury that it was *not* sufficient to establish a strong *probability* of guilt, but rather, that legal and moral certainty was required. The judge gave no specific examples of what he felt were important decisions. Indeed, in light of the very brief reference to important decisions and the lack of any specific examples given to illustrate its meaning, the instruction in the instant case was even less objectionable than that in *Bumpus.*

### C.

Appellant also challenges the judge's reference to alibi as a "defense often attempted by contrivance, subornation, and perjury," which thus should be subjected to "rigid scrutiny". The judge further stated that, in weighing the evidence,

> "testimony tending to show that the accused was in another place at the time of the offense is in direct conflict with that which contends he was at the place the crime was committed and actually committed it.... And it is, therefore, for the jury to decide where the truth lies."

It is constitutional error to shift the burden of proving an alibi defense to a defendant. *Commonwealth v. McLeod,* 367 Mass. 500, 502, 326 N.E.2d 905, 906 (1975). In *McLeod* the court held it "unwise" to refer to alibi as a "defense" and to single out alibi evidence for "rigid scrutiny"; "[i]f such a charge is given, it should also be pointed out that an alibi may be the only refuge of the innocent." *Id.,* 326 N.E.2d at 906. Although the trial judge in the instant case omitted the "refuge of the innocent" language, the *McLeod* decision came down years after appellant's trial and it was not given retroactive application by the Massachusetts state courts. *See Commonwealth v. Williams,* 378 Mass. 242, 243–45, 390 N.E.2d 1114, 1116 (1979); *Commonwealth v. Leaster,* 362 Mass. 407, 416, 287 N.E.2d 122, 128 (1972).

We are not persuaded by appellant's argument that under the Court's decision in *Hankerson v. North,* 432 U.S. 232 (1977), due process requires the retroactive application of *McLeod* despite the Massachusetts courts' refusal to do so. In *Hanker-*son, the Court required North Carolina to give retroactive application to *Mullaney v. Wilbur,* 421 U.S. 684 (1975), which required the state to establish the elements of a criminal offense beyond a reasonable doubt. The jury instructions at issue in *Hankerson* explicitly imposed a burden of proof on a criminal defendant as a matter of state law. That is a far cry from the instant case. The instructions in the instant case embraced abundant mitigating language that the Commonwealth bears the burden of proof.

### D.

Appellant also argues that the judge's instructions on malice were erroneous. The judge first instructed the jury that "[p]roof beyond a reasonable doubt is sufficient without proof of motive". Appellant concedes that this is a correct statement of the law. What appellant objects to is the way in which the judge later defined motive and malice:

> "Malice has been defined by a former imminent [sic] Justice of our Court: 'not only hatred and anger and revenge, but every other unlawful and unjustifiable motive.' It is not confined to ill will toward one or more individual persons, but it is intended to denote any action flowing from a wicked and corrupt motive. Motive is what: it is that which impels the action. And if the action is unlawful, the motive is malicious in the eyes of the law. Further, malice is implied in every deliberate cruel act against another."

Appellant claims that these statements led the jury to believe that the Commonwealth was not required to prove motive or malice beyond a reasonable doubt. We disagree. The statements in question constitute only one part of a lengthy explanation. Viewing the charge as a whole, it is clear that, despite appellant's protestations to the contrary, the burden of proving both malice and motive were placed on the Commonwealth. The judge mentioned several times that the Commonwealth must prove beyond a reasonable doubt that the crime of murder was committed. Moreover, the

charge as a whole, as well as the Commonwealth's presentation of its case, emphasized that the Commonwealth's primary theory was that the murder was committed with extreme atrocity or cruelty, rather than malice aforethought.

We hold that, viewed in context, any claimed errors in the malice instruction did not rise to the level of a due process violation.

### E.

Appellant further argues that the judge's comment that "[t]he crime of murder implies atrocity or cruelty" indicated to the jury that the Commonwealth was not required to prove extreme atrocity or cruelty. Again, this comment must be examined in the context of the judge's entire statement on this issue which was:

> "Also, an enactment of the Legislature, in 1858, provided for different degrees of murder and established the law that a murder committed with deliberate premeditated malice aforethought or a murder committed while attempting to commit or actually committing a crime punishable with death or life imprisonment or a murder committed with extreme atrocity or cruelty should be punished more severely than murder in the second degree.
>
> This Statute doesn't change the definition of murder. It merely provides the definite punishment for murder committed under circumstances enumerated in the Statute.
>
> The crime of murder implies atrocity and cruelty of the guilty party. But there are degrees of criminality in this respect, even in the wrongful malicious taking of a human life.
>
> And in order to justify a finding of murder in the first degree by reason of its perpetration through extreme atrocity or cruelty, it requires that something more than ordinary understanding of the crime shall exist. Something, I am implying, more than the ordinary criminality, manifesting a degree of atrocity or cruelty which must be considered as aggravated or extreme."

As the district court found, the trial judge properly explained to the jurors that, to find first degree murder, they must first find atrocity or cruelty beyond that normally implied in any wrongful taking of a human life.

### F.

Finally, appellant asserts that the judge's statement that acts such as fleeing the scene of the crime may be an "admission" of guilt, rather than evidence of "consciousness" of guilt, resulted in shifting the burden of proof and vitiating the reasonable doubt standard. We hold it did neither. As the district court pointed out, the judge clarified what he meant by an "admission", stating that the jury should determine the motives in the acts of concealment and ascertain their relation to the killing before considering such acts as evidence bearing on guilt.

In short, to summarize our holding under this section of our opinion, we conclude that, although the challenged instructions might be said to be somewhat disturbing, they did not undercut or dilute the Commonwealth's burden of proof or the reasonable doubt standard—either singly or in their entirety. The jury repeatedly was advised of the correct burden of proof and the reasonable doubt standard. It was informed of its responsibility in rendering a verdict. While we do not necessarily approve of all the language used by the trial judge, we do hold that the claimed errors did not rise to such magnitude as to deprive appellant of his constitutional right to due process.

### III.

We next turn to appellant's argument that the district court erred in dismissing on procedural grounds two of his claims: (1) that the instructions on circumstantial evidence included prejudicial statements; and (2) that the trial court erroneously stated that all confessions must be deemed prima facie voluntary.

## A.

■ Appellant challenges the trial court's statement that the advantages of circumstantial evidence arise from its commonly coming from several different sources, and thus "the chain of circumstances is less likely to be falsely prepared and arranged, and falsehood and perjury are likely to be detected and fail of their purpose." Since appellant failed to object at trial to this allegedly prejudicial statement regarding the strength of circumstantial evidence, the Massachusetts state courts rejected the issue as waived when he raised it in his motion for a new trial in the state courts. Appellant's failure to comply with the Commonwealth's contemporaneous objection rule constitutes an adequate and independent state procedural ground precluding habeas review. *Wainwright v. Sykes*, 433 U.S. 72 (1977). The Commonwealth did not exempt appellant from its general rule. He therefore is foreclosed from raising the issue in a federal habeas proceeding unless he can show *both* that he had cause for failure to raise the claim and that the failure caused him actual prejudice. *Id.* at 86–87; *Reed v. Ross*, 466 U.S. 1, 8–11 (1984); *Engle v. Isaac*, 456 U.S. 107, 129–34 (1982).

The district court carefully analyzed the claim and concluded that the *Wainwright* standards had not been met. We agree that appellant failed to demonstrate that the alleged error caused him actual prejudice. As a result, there is no need to determine whether appellant had cause for failure to raise the claim at trial. The standards enunciated in *Henderson v. Kibbe, supra*, 431 U.S. at 154, and *United States v. Frady*, 456 U.S. 152, 169 (1982) require that an appellant claiming prejudice prove that the challenged instruction was so egregiously erroneous as to infect the entire trial. Appellant did not meet this burden. Overall, any alleged errors in the trial court's charge were adequately counterbalanced.[1]

## B.

■ Appellant had raised in his second petition the claim that the judge erroneously stated that all confessions must be deemed prima facie voluntary and then abandoned the claim. Rule 9(b) of the Rules governing proceedings under 28 U.S.C. § 2254 requires dismissal of this claim as an abuse of the writ. After the Commonwealth clearly pleaded abuse of the writ, appellant neither alleged nor proved as required that he had not abused the writ. *See Price v. Johnston*, 334 U.S. 266, 292 (1949).[2]

## IV.

■ This brings us, finally, to appellant's claim that he was entitled to a manslaughter instruction. This warrants only a brief discussion. A manslaughter instruction is required only if there is sufficient evidence to support a reasonable belief that the victim's acts would have produced "in an ordinary person such a state of passion, fear, fright, nervous excitement as would eclipse his capacity for reflection or restraint." *Commonwealth v. Walden*, 380 Mass. 724, 728, 405 N.E.2d 939, 944 (1980). Even after resolving all inferences in appellant's favor and accepting his statement that the victim argued with him over a card game and slapped him and called him names, as the district judge succinctly

---

1. We note first that appellant's statement that the prejudice was magnified by the fact that the Commonwealth's case was based "entirely" on circumstantial evidence is not supported by the record. There was significant direct evidence against appellant, including his own confession. Second, although there is no need to determine whether appellant had cause for failure to raise the claim at trial, we note with dismay his conclusory statement that he met the *Wainwright* standard since counsel's failure was due to "neglect" or "oversight" rather than a "deliberate tactic". Not only is this statement unsupported, but such an argument fails as a matter of law. In *Murray v. Carrier*, 477 U.S. 478, 486–89 (1986), the Supreme Court held that, unless attorney error rises to the level of ineffective assistance of counsel, it does not constitute cause for a procedural defect.

2. Appellant again defended this failure with a conclusory statement that attorney "neglect" caused the failure, rather than a "deliberate oversight". For the reasons stated in note 1, *supra*, this claim fails.

stated no ordinary person would have been provoked to injure the victim so as to break her nose, jaw and hyoid bone, give her multiple bruises, and then, while she still lived, incise her and insert a gingerale bottle. These injuries were so extreme and the alleged provocation so slight, even if it occurred, that this case is hopelessly wide of the mark where a manslaughter instruction would be required. A judge is not required to charge on a hypothesis not supported by the evidence. *Commonwealth v. Johnson*, 379 Mass. 177, 180, 396 N.E.2d 974, 976 (1979).

### V.

To summarize:

After carefully considering all of appellant's claims of error and having carefully examined the record, we conclude that there is no merit in any of his claims of error.

We hold that the jury instructions, when considered in their entirety, did not undermine the reasonable doubt standard or impermissibly shift the burden of proof to appellant. We also hold that the procedural dismissals of two claims were proper since an independent state procedural ground precluded habeas review and appellant did not meet the requisite prejudice standard as to one claim, and appellant abused the writ as to the other claim. We further hold that the evidence did not warrant a manslaughter instruction.

We affirm substantially for the reasons set forth in Judge Skinner's excellent district court opinion. 674 F.Supp. 365 (D.Mass.1986).

Affirmed.