COMMONWEALTH *vs.* LARRY WALDEN.

Suffolk.   March 7, 1980. — May 30, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Capital case. *Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions, Relevancy and materiality, Consciousness of guilt, Other offense, Polygraphic test.

At a murder trial, the judge did not err in refusing to instruct the jury with respect to manslaughter since no view of the evidence would warrant a verdict of manslaughter.  [725-730]

A judge did not err in denying a defendant's motion to suppress statements made to the police during interrogations which were not preceded by Miranda warnings where the evidence warranted findings that the defendant went to the police station voluntarily, was not taken into custody, detained against his will, or otherwise deprived of his freedom.  [730-731]

At a murder trial, the judge did not err in admitting statements by the defendant to the police which concerned the defendant's conduct before and after the time of the homicide and which included references to his prior incarcerations.  [731-732]

At a criminal trial, the judge did not abuse his discretion in the denial of the defendant's motion, made on the sixth day of trial, for appointment of an expert to analyze polygraph data generated under undisclosed test conditions by a person of undisclosed competence.  [732-733]

INDICTMENTS found and returned in the Superior Court on August 12, 1976.

The cases were tried before *Adams, J.*

*Stephen Hrones* for the defendant.

*Sharon D. Meyers,* Legal Assistant to the District Attorney (*Michael J. Traft,* Assistant District Attorney, with her) for the Commonwealth.

WILKINS, J.  The defendant was convicted of murder in the first degree of a father and a son.  He was also convicted

of breaking and entering a dwelling house in the daytime with intent to commit larceny and to put a person therein in fear. He received concurrent life sentences on the murder convictions, and a concurrent sentence on the breaking and entering conviction.

The defendant argues four issues and urges that, if the convictions of murder in the first degree are not reversed, this court should exercise its power and duty under G. L. c. 278, § 33E, to direct the entry of verdicts of a lesser degree of guilt. We affirm the convictions and see no basis for reducing the verdicts on the murder convictions.

1. The defendant argues that the judge erred in declining to instruct the jury on a possible verdict of manslaughter. The defendant's counsel, who is not his counsel on appeal, requested such an instruction only in general terms, without specifying whether the request related to voluntary or involuntary manslaughter, or both. Nor did he state the theory on which he believed an instruction was required.[1] We conclude that there was no prejudicial error in the failure to give a manslaughter instruction.

In support of his argument, the defendant relies on the testimony of his former girlfriend, who testified for the Commonwealth concerning inculpatory statements that she said the defendant made to her. We summarize this witness's testimony concerning the defendant's statements to her. The defendant went downstairs from the apartment where he lived and, intending to steal money, entered the victims' apartment which he thought was unoccupied. The younger victim, the son, was there watching television.

---

[1] As to the elements of voluntary manslaughter, see *Commonwealth* v. *Kendrick*, 351 Mass. 203, 211-212 (1966). As to the two aspects of involuntary manslaughter, see *Commonwealth* v. *Campbell*, 352 Mass. 387, 397 (1967).

While we will review the refusal of a judge to charge on manslaughter when such a general objection is lodged, the judge would have been justified in requiring the defendant to suggest the specific manslaughter instruction or instructions he wanted. If the judge had required him to do so, on appeal we would have held the defendant to his choice or choices.

The son told the defendant that he was going to call the police. The defendant replied, "Wait a minute, no. I will just leave." The son said, "No," grabbed the defendant, and "pulled him back." They started fighting. The son scratched the defendant on the face. When the son grabbed the telephone to call the police, the defendant strangled the son "with the telephone." While the defendant was strangling the son, the victim's father walked in, carrying grocery bags. The father went to aid his son, who was already on the floor. The father hit the defendant. They fought. The defendant used Kung Fu and karate to knock the father down, but he got back up three or four times. The defendant had something in his hand, but he did not tell the witness what it was. He stabbed the father "around his neck." After stabbing the father several times, the defendant "just went off on him." He did not enter the apartment intending to kill the victims. He killed them because he did not want to go back to jail. The defendant asked his girlfriend to say he was with her at the time of the crimes.

A medical examiner testified that he found a telephone extension cord tied around the son's neck and bruises on his head and neck, some of which were consistent with manual strangulation. The son died of asphyxiation due to strangulation. The medical examiner testified further that the father appeared to be about eighty-four years old. The father died of numerous stab wounds on his neck; he had other wounds and bruises elsewhere on his body.

It is well established that, if any view of the evidence in a case would permit a finding of manslaughter rather than murder, a manslaughter charge should be given. See *Commonwealth* v. *Johnson*, 379 Mass. 177, 179-180 (1979); *Commonwealth* v. *Burke*, 376 Mass. 539, 542 (1978). The defendant here testified and denied involvement in the crimes. However, the fact that a defendant in a murder case asserts an alibi, and thus in effect argues that the evidence of his involvement was false, does not relieve the judge from giving a manslaughter charge, on request, where the evidence would warrant a conviction of that lesser crime. See *Com-*

*monwealth* v. *LeBlanc,* 373 Mass. 478, 491 (1977) (propriety of refusal to give manslaughter charge considered where defendant claimed an alibi); *Commonwealth* v. *Caine,* 366 Mass. 366, 374 (1974) (same). On the other hand, a judge need not charge on an hypothesis not supported by evidence. *Commonwealth* v. *Johnson, supra* at 180. *Commonwealth* v. *Costa,* 360 Mass. 177, 184 (1971). Indeed, it would be error to give a charge on manslaughter without some supporting evidence of the commission of that crime. *Commonwealth* v. *Caine, supra* at 375. *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 321 (1973).

Voluntary "manslaughter . . . [is] a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat." *Commonwealth* v. *Soaris,* 275 Mass. 291, 299 (1931). The defendant asserts that there was evidence of sudden combat that could have been found to have provoked a "perturbation of mind" resulting in a killing without malice. See *Commonwealth* v. *Peters,* 372 Mass. 319, 324 (1977); *Commonwealth* v. *Kendrick,* 351 Mass. 203, 212 (1966). He points to evidence of the struggle with the son in support of his claim of sudden combat and argues that his use of a knife on the father also could have been the result of the heat of sudden combat. See *Commonwealth* v. *Jones,* 366 Mass. 805, 809 (1975).

There was no evidence that raised a reasonable doubt whether the defendant formed an intent to kill in a transport of passion or in the heat of blood, "with the result that the homicide [was] unlawful but, the element of malice being missing, the crime [might be] mitigated from murder to manslaughter." *Commonwealth* v. *Kendrick, supra* at 212. There may indeed have been "combat," in the limited sense that struggles occurred in which blows were exchanged. However, physical contact between a defendant and a victim is not always sufficient to warrant a manslaughter instruction, even when the victim initiated the contact. See *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 321 (1973) ("It is an extravagant suggestion that scratches [in-

flicted by the victim on the defendant's face] could serve as provocation for a malice-free but ferocious attack by the defendant with a deadly instrument"). There must be evidence that would warrant a reasonable doubt that something happened which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant. See *Commonwealth* v. *Rooney,* 365 Mass. 484, 494-495 (1974), and cases cited. There was no such evidence in this case.

As to the eighty-four-year old father, the evidence raises no rational possibility of provocation justifying the use of deadly force as a response in the heat of passion on sudden combat. There was evidence that, when the father discovered the defendant strangling his son, the father began "hitting him and banging back at him." If these blows presented any threat of serious harm to the defendant, their effect had passed when the defendant knocked the father down several times. See *Commonwealth* v. *Zukoski,* 370 Mass. 23, 29 (1976). Although the witness testified that the defendant said he "just went off on him," and could not remember thereafter exactly what happened (testimony that might warrant an inference that the defendant acted in the heat of passion), this only occurred after the defendant had already stabbed the father several times.

As to the son, the defendant relies on evidence that the son prevented the defendant from leaving the apartment and struck the first blow in the struggle which ensued. Thereafter the evidence leaves the circumstances to pure surmise. In the absence of any evidence as to the circumstances of the struggle, no reasonable doubt was raised as to whether the defendant reacted on reasonable provocation. The jury could not be permitted merely to speculate on whether the defendant in the course of the struggle might have been roused to the heat of passion.[2]

---

[2] There is a further reason why the defendant's conviction of murdering the son should not be reversed. Any failure to give a manslaughter charge

The defendant also argues that a manslaughter charge was warranted because the jury could have found on the evidence that he acted in self-defense but used excessive force. See *Commonwealth* v. *Kendrick,* 351 Mass. 203, 211-212 (1966), where this theory of voluntary manslaughter is discussed. However, as to neither the son nor the father does the evidence raise a reasonable doubt that the defendant "had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force." *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980).[3]

---

was not prejudicial to the defendant. We know from the verdicts on the murder indictments that the jury found that the defendant killed the victims. Any homicide during the commission of a felony (*Commonwealth* v. *LePage,* 352 Mass. 403, 420 [1967]), or incident to an effort to escape after the commission of a felony (*Commonwealth* v. *Lussier,* 333 Mass. 83, 92 [1955]), is murder and not manslaughter. We also know from the jury's verdict of guilt on the felony charge of breaking and entering in the daytime with intent to commit larceny that the defendant committed a felony. That verdict could not logically have been influenced by the omission of a manslaughter instruction. Because the defendant had committed a felony and the son announced his intention to arrest the defendant as he attempted to flee, the son as a private citizen had the right to use reasonably necessary, nondeadly force to effect the arrest. See *Commonwealth* v. *Klein,* 372 Mass. 823, 830 (1977); *Commonwealth* v. *Lussier, supra.* The arrested person has no right to use force to resist such an arrest. Although, in particular circumstances, the use of unreasonable force by a person making an otherwise lawful arrest might give rise to the right to self-defense or constitute reasonable provocation or other mitigating circumstances which might reduce a crime from murder to manslaughter (see *Commonwealth* v. *Lussier, supra* at 93; Annot., 44 A.L.R.3d 1078, 1091-1094 [1972]), there is no evidence that the son used unreasonable force in attempting to detain the defendant.

[3] The defendant does not argue here, nor did he argue at trial, that he was entitled to a charge on self-defense, which (if accepted by the jury) would completely exonerate him. The facts on no hypothesis called for such a charge on self-defense. There was no evidence to suggest (and thus warrant a reasonable doubt) that the defendant "had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force" and had "used no more force than was reasonably necessary in all the circumstances of the case." *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980).

The defendant argues further that a charge on involuntary manslaughter was required by the evidence, as to the death of the son.[4] A consideration of the evidence shows that the jury would not have been warranted in concluding that the son's death was "unintentionally caused by an act which constitute[d] such a disregard of probable harmful consequences to another as to amount to wanton or reckless conduct." *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 747 (1975). On no view of the evidence could the jury rationally have found that the death caused by a ligature knotted around the son's neck was caused unintentionally. *Commonwealth* v. *Santo,* 375 Mass. 299, 306 (1978). Contrast *Commonwealth* v. *McCauley,* 355 Mass. 554, 559-562 (1969) (shooting); *Commonwealth* v. *Campbell,* 352 Mass. 387, 397-398 (1967) (strangling) (evidence would have warranted the conclusion that the killings were unintended).

2. The defendant argues that answers he gave to questions by the police, six and eight days after the homicides, should have been suppressed. The questioning was not preceded by Miranda warnings. He contends further that the police first learned of the existence of his girlfriend as a result of these interrogations and that, therefore, his girlfriend's testimony concerning his incriminating statements should also be suppressed.

In each instance, the defendant, who was one of several suspects, went to the police station voluntarily at the request of the police, submitted to questioning by a police officer, took a polygraph test, and left. In denying the motion to suppress, the judge made findings, fully warranted by the evidence, that the defendant was not taken into custody, detained against his will, or otherwise deprived of his freedom. See *Oregon* v. *Mathiason,* 429 U.S. 492, 495 (1977). He found no evidence that the behavior of the police overbore the defendant's will to resist or brought about any

---

[4] Because the defendant received concurrent life sentences, success solely in this argument (and in any other argument directed to only one murder conviction) seemingly would offer little practical benefit for the defendant.

statements not freely given. We see no benefit in discussing various arguments, and inferences from the evidence, that the judge might have accepted but did not. Nothing in the record prompts us to reach different conclusions in our independent review of the defendant's constitutional claims. See *Commonwealth* v. *Watkins,* 375 Mass. 472, 476 (1978), and cases cited, concerning our independent appellate function in cases of this character.

The defendant's claim that the judge believed that Miranda warnings would have been required only if the defendant were formally under arrest is without support in the record.

3. The defendant argues that his statements to the police should have been excluded as incompetent hearsay, and that, in any event, certain remarks he made in the course of those statements should have been excluded as irrelevant and highly prejudicial. The short answer to these contentions is that, although the judge gave defense counsel several opportunities to do so, defense counsel declined to object to the admission of any of these statements. These arguments may not be raised for the first time on appeal. *Guillemette* v. *Commonwealth,* 375 Mass. 543, 546-547 (1978). Nor is review pursuant to our broad powers under G. L. c. 278, § 33E, "intended to afford an opportunity, from the vantage point of hindsight, to comb the trial record for interesting questions which could have been, but in fact were not, raised at the trial." *Commonwealth* v. *Johnson,* 374 Mass. 453, 465 (1978). Therefore, our consideration of these contentions is properly limited to a determination whether there was a "miscarriage of justice." *Commonwealth* v. *Laliberty,* 373 Mass. 238, 240 (1977).

We conclude there was no error, much less a miscarriage of justice, in admitting the defendant's statements. Those statements, which concerned the defendant's conduct before and after the time of the homicide, set forth the defendant's activities and laid a base for the testimony of his girlfriend. They were properly admitted as statements by the accused of facts pertinent to the issue of his involvement in

the crimes, insufficient in themselves to warrant conclusions but tending, when coupled with other evidence, to establish guilt. *Commonwealth* v. *Bonomi,* 335 Mass. 327, 347 (1957). The defendant's statement concerning how he received certain scratches under his eye, considered with other testimony, could have raised the inference that in this respect he lied to the police, furnishing an indication of consciousness of guilt. See *Commonwealth* v. *Smith,* 368 Mass. 126, 129 (1975); *Commonwealth* v. *Eppich,* 342 Mass. 487, 492 (1961); W.B. Leach & P.J. Liacos, Massachusetts Evidence 198 (4th ed. 1967).

The defendant's references to his prior incarcerations were admissible, not as evidence of prior bad conduct to prove he committed the present crimes, but as tending to establish a motive for the killings. See *Commonwealth* v. *Hoffer,* 375 Mass. 369, 372-373 (1978). Relevant evidence is not rendered inadmissible simply because it suggests to the jury that the defendant has committed other crimes. *Commonwealth* v. *Monsen,* 377 Mass. 245, 252 (1979). *Commonwealth* v. *Lacy,* 371 Mass. 363, 366 (1976). These references, in light of the girlfriend's testimony that the defendant "said he wasn't going back to jail," provided evidence bearing on the question of premeditation. Their probative value outweighed any prejudicial effect they may have had on the jury.

4. On the sixth day of trial, the defendant moved orally to have data ("charts" and "graphs") from the two polygraph examinations administered to him at the police station analyzed by an expert. The judge denied the motion.

At the time of trial, *Commonwealth* v. *A Juvenile,* 365 Mass. 421 (1974), had been decided, but *Commonwealth* v. *Vitello,* 376 Mass. 426 (1978), had not. However, the rules of the *Vitello* case apply to this trial. See *Commonwealth* v. *Malone,* 376 Mass. 931 (1978). Under the *Vitello* case, any unfavorable test results could have been introduced against the defendant for impeachment purposes if he took the stand. *Commonwealth* v. *Vitello, supra* at 456-457. Defense counsel sought to limit the expert testimony to that which would be exculpatory.

The tests had already been conducted by a person whose qualifications were unclear at best. The importance of the examiner's skill and qualifications, of the appropriate choice of test questions, and of the proper supervision of the test conditions and procedures were noted in the *Vitello* case. *Id.* at 439 & 454. The defendant made no attempt to show any of the circumstances of the two tests, or even that the "charts" and "graphs" were available at the time of trial.

There was no abuse of discretion in the denial of a motion, made inexplicably late in the trial, for appointment of an expert to analyze polygraph data generated under undisclosed test conditions by a person of undisclosed competence.

5. A review of the transcript and consideration of the defendant's various arguments reveal no occasion to alter the verdicts of guilty of first degree murder under G. L. c. 278, § 33E.

*Judgments affirmed.*