## COMMONWEALTH *vs.* RAFAEL DEARMAS.

Essex.    December 2, 1985. — March 25, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Homicide. Practice, Criminal,* Motion to dismiss, Instructions to jury, Fair trial. *Jury and Jurors.    Grand Jury.    Evidence,* Admissions and confessions. *Identification.*

A motion by the defendant in a murder case to dismiss the indictment based on a claim that, because of biased selection procedures, Hispanic persons were substantially underrepresented on the grand jury which had indicted him was properly denied, where the motion was not accompanied by an affidavit as required by Mass. R. Crim. P. 13 (a) (2), where the motion was filed substantially more than seven days after the pretrial conference report and thus was too late to be considered as of right, and where the defendant made no significant offer of proof to satisfy his burden of making a prima facie case of discriminatory selection procedure. [169-170] LIACOS, J., concurring.

A criminal defendant's appeal from the denial of his motion to suppress statements made by him to police presented no significant appellate question, where the defendant merely reargued factual issues resolved against him by the motion judge. [170]

At the trial of a murder case, the judge did not err in denying the defendant's motion to suppress testimony of the identification by the victim's wife of a photograph of the defendant as that of the man who had approached her house on the night of the murder. [170]

At a murder trial, the judge did not err in refusing to instruct the jury with respect to manslaughter where no view of the evidence would have warranted such a verdict. [170-171]

There was no merit to a contention made by the defendant in a murder case that the judge's treatment of defense counsel and certain comments made by the judge on the evidence denied the defendant a fair trial. [171-172]

INDICTMENT found and returned in the Superior Court Department on October 19, 1983.

A motion to dismiss and motions to suppress were heard by *John L. Murphy, Jr.,* J., and the case was tried before him.

*Albert S. Previte, Jr.,* for the defendant.

*Robert H. Scarino,* Special Assistant District Attorney, for the Commonwealth.

WILKINS, J. A jury convicted the defendant of the murder in the first degree of Philip LaCorte, who died from a single stab wound inflicted early on New Year's Day in 1982. We affirm the conviction.

Shortly before midnight on December 31, 1981, the victim and his friend Carlos LeBron drove in the victim's truck to a bar in Lawrence frequented by members of the Hispanic community. LeBron and the defendant argued, and the dispute escalated into a fistfight. Although the fight was broken up quickly, the defendant showed a continuing hostility toward LeBron, which LeBron reciprocated. Each antagonist gathered supporters. Further altercations ensued, and then the victim and LeBron drove away in the victim's truck. After traveling a short distance, however, LeBron got out and walked back toward the bar. The defendant, who, witnesses testified, was carrying a knife in his sleeve, also left the area with others in a motor vehicle headed in the same direction as the truck.

Shortly after 1 A.M., the victim's wife heard a loud banging on the front door of her first floor apartment in South Lawrence. She looked out a front window and saw her husband's truck parked with the door open in front of an automobile occupied by several people. She also saw a man, whom she later identified as the defendant, get out of the car and walk toward the front porch where her husband was standing. She then left the window and hurried to unlock the front door. There was evidence tending to show that it was at this moment that the defendant stabbed the victim. When she met her husband at the door, he was agitated, saying, "He's blaming me." The victim went to the bedroom, picked up a gun, returned to the front porch, and fired several shots at the departing automobile. He then entered his truck and, over his wife's protests, drove off after the other vehicle. Shortly thereafter, a witness saw the victim driving toward the bar in the wrong direction on a one-way street. The truck crashed into a line of cars. The victim was found unconscious, slumped over the wheel. Taken

to a local hospital, he was pronounced dead shortly after 2 A.M. The medical examiner testified that the stab wound was such that it could have bled very little externally and that the victim could have remained conscious and driven a motor vehicle for one-half hour or more after the stabbing.

A few days after the incident, the defendant left the Commonwealth with his girl friend, and lived in Florida for a while, and then in New York City. In May, 1983, they moved to Manchester, New Hampshire, where the defendant was arrested.

1. On December 30, 1983, four days before trial was to begin, the defendant filed a motion to dismiss the indictment asserting that, because of biased selection procedures, Hispanic persons were substantially underrepresented on the grand jury which indicted him. The judge properly denied the motion without an evidentiary hearing. The motion was not accompanied by an affidavit detailing all facts relied on in support of the motion as required by Mass. R. Crim. P. 13 (a) (2), 378 Mass. 871 (1979). The unexplained absence of an accompanying affidavit alone justified denial of the motion. *Commonwealth* v. *Pope,* 392 Mass. 493, 501 (1984). Moreover, the motion was filed substantially more than seven days after the filing of the pretrial conference report and thus was too late to be considered as of right. Mass. R. Crim. P. 13 (d) (2), 378 Mass. 871 (1983).

In any event, the defendant had the burden of making a prima facie case of discriminatory selection procedure. See *Commonwealth* v. *Pope, supra* at 498; *Commonwealth* v. *Aponte,* 391 Mass. 494, 508-509 (1984). A list appended to the motion naming the members of the grand jury which indicted him is not adequate. He made no significant offer of proof. Even before us, the defendant argues only that he would have relied on the evidence which was found sufficient to warrant dismissal of indictments in the *Aponte* case, which involved indictments issued in or prior to August, 1981. *Id.* at 495. The indictment in this case is dated October 19, 1983. We are not inclined to assume that the response to our December, 1980, recommendations for Statewide changes in

annual jury selection procedures was total inaction. See *Commonwealth* v. *Bastarache,* 382 Mass. 86, 103 (1980). The fact that Essex County became a participating county in the "one-day or one-trial" jury system on January 1, 1984, does not compel any conclusion concerning the constitutionality of selection processes for an Essex County grand jury sitting in October, 1983.

2. The defendant's motion to suppress his statements to the police a few days after his arrest presents no significant appellate question. The defendant reargues factual issues that the motion judge has resolved against him. His brief fails to acknowledge the judge's findings of fact rejecting both his version of what happened in the course of the questioning and of his claimed improficiency in the English language.

3. Similarly, the judge properly denied the defendant's motion to suppress certain identification testimony. The facts found by the judge show that the victim's wife identified a photograph of the defendant as that of the man who approached her house in the early morning of January 1, 1982. The judge found nothing improperly suggestive in the identification procedures followed by the police. It would have been better practice if, rather than reciting her testimony on the subject, the judge had found in at least general terms how many photographs the police had shown the witness. We nevertheless think it inherent in the judge's findings that the police showed her not one, but a few, photographs.

4. The judge properly declined to charge the jury that they could return a verdict of manslaughter. Contending that there was evidence that he acted from sudden heat of passion upon reasonable provocation or from sudden combat (*Commonwealth* v. *Medeiros,* 395 Mass. 336, 341 [1985]), the defendant argues that the jury would have been warranted in returning a guilty verdict based on voluntary manslaughter.

We consider all the evidence, making reasonable inferences in the defendant's favor, to determine whether such an instruction should have been given. *Commonwealth* v. *Walden,* 380 Mass. 724, 726 (1980). *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746 (1975). The fact that the defendant denied

carrying a knife that night and in effect denied stabbing the victim did not by itself relieve the judge of giving a manslaughter instruction if other evidence would have warranted conviction of manslaughter. See *Commonwealth* v. *Walden, supra* at 726.

Speculation that there may have been combat or provocation between the victim and the defendant is not enough to require a manslaughter instruction. See *Commonwealth* v. *Benoit,* 389 Mass. 411, 424 (1983); *Commonwealth* v. *Walden, supra* at 727-728. It is true that there was violence between the defendant and LeBron earlier that night, and that the victim had been in LeBron's company. The defendant points, however, to no evidence concerning the circumstances of the stabbing in support of his theory.

In our independent review of the transcript, we note testimony, not relied on by the defendant, that comes as close to calling for a manslaughter charge as any evidence in the case. The defendant's former girl friend testified to statements made by the defendant while they were out of the State after the killing. He told her that, while driving in South Lawrence after the events at the bar, he saw a truck pull into a yard. "[T]he guy got out of the truck and he was going towards the house . . . . [T]he defendant jumped out of the car with a knife and went towards the guy and I guess they struggled and he stabbed him one time in the stomach." The defendant instigated the confrontation. She "guessed" they had struggled. Her testimony raises no hint that this situation would likely have prompted in an ordinary person "a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant." *Commonwealth* v. *Walden, supra* at 728.

5. The defendant's argument that the judge's treatment of defense counsel and comments on the evidence denied him a fair trial is without merit. Several of the judge's comments about the slow pace of the trial and defense counsel's contribution to that pace were justified. Although better practice suggests that, where possible, comments on counsel's perform-

ance not be made before the jury, the judge was reasonable in his treatment of counsel and most particularly was correct in instructing the jury not to hold against the defendant any conflicts he may have had with counsel.

6. The defendant makes no independent argument for relief under G. L. c. 278, § 33E (1984 ed.). The victim's death occurred because of senseless combat between the defendant and a third person following what appears to have been a disagreement over a trivial matter. The defendant, armed with a knife and seeking revenge for the insult, sought out, pursued, and stabbed the victim, perhaps mistaking him for his recent antagonist. The circumstances do not warrant any reduction in the sentence.

*Judgment affirmed.*

LIACOS, J. (concurring). I join the court in its reasoning and in the conclusion that the judgment should be affirmed. One aspect of the court's treatment of the selection of Essex County grand juries requires, however, some comment.

The court holds that the defendant did not meet the requirements of Mass. R. Crim. P. 13 (a) (2), 378 Mass. 871 (1979), so as to preserve the issue for appeal. I agree. I note that, in addition to the authorities cited by the court, we said in *Commonwealth* v. *Aponte,* 391 Mass. 494, 510 n.23 (1984), that "[t]he principle we announce today . . . will be open on direct appeal only to such defendants who *properly* have raised . . . similar claims by a pretrial motion to dismiss" (emphasis supplied). This defendant, as the court points out, did not meet that requirement.

On the other hand, the court's statement that it is "not inclined to assume that the response to our December, 1980, recommendations for Statewide changes in annual jury selection procedures [in *Commonwealth* v. *Bastarache,* 382 Mass. 86, 103 (1980)] was total inaction" (*supra* at 169-170) is unduly optimistic. This is so for two reasons. *Bastarache* was decided on December 12, 1980, and yet, as *Commonwealth* v. *Aponte, supra* at 497, reveals, discriminatory selection procedures were

still being utilized in Essex County through 1981. Thus, it seems to me more appropriate "to assume" that the situation that persisted in Essex County in the years 1976-1981 (*Aponte, supra* at 497, 499-501) continued to exist until the advent of the "one day or one trial" system in that county on January 1, 1984. It is well recognized that there is an inference that a state of things proved to exist continues to exist until there is evidence to the contrary. *Conroy* v. *Fall River Herald News Publishing Co.*, 306 Mass. 488, 493 (1940). *Galdston* v. *McCarthy*, 302 Mass. 36, 37 (1938). In this context, it seems to me to be a more appropriate assumption that the same state of affairs existed in Essex County when Judge Hallisey filed his extensive and carefully worked out findings and rulings on July 19, 1982, and until we affirmed those rulings in 1984 in *Aponte*. Indeed, the list of grand jurors who indicted the defendant on October 19, 1983, filed by the defendant with his motion, tends to corroborate this inference since it reveals not one surname cognizable as remotely Hispanic in nature.

Even though we did not issue our opinion in *Aponte* until March 19, 1984, Judge Hallisey's orders in *Aponte* were the law of Essex County pending our decision. In this context, I find it hard to understand how the judge in this case was allowed to proceed without the record revealing whether he was advised by either the prosecutor or the defense counsel of Judge Hallisey's decision, and whether or not the problem of discriminatory jury selection had been resolved by the time this defendant was indicted. In my view, both counsel had a duty so to advise the judge in their role as officers of the court.