COMMONWEALTH vs. ALVIN PITTS.

Suffolk.    November 7, 1988. — January 3, 1989.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Instructions to jury. *Intent.*

At the trial of an indictment for first degree murder the judge correctly
declined to give an instruction on manslaughter where insufficient evi-
dence was presented to raise the issue whether the defendant had the
requisite state of mind at the time of the shooting. [667-668]

Where the evidence presented at a murder trial was sufficient for a jury to
find, beyond a reasonable doubt, that the defendant intended to kill one
of two persons and, in the course of an attempt to do so, killed a third
person, the judge correctly instructed the jury on transferred intent.
[668-669]

INDICTMENTS found and returned in the Superior Court De-
partment on July 10, 1986.

The cases were tried before *Sandra L. Hamlin,* J.

*Calvin J. Wier* for the defendant.

*Jane A. Donohue,* Assistant District Attorney, for the Com-
monwealth.

LIACOS, J.   The defendant was convicted of murder in the
first degree.[1] On appeal, he contends that the judge erred in
refusing to charge the jury on manslaughter and in her charge
on transferred intent, and he urges this court to exercise its
power under G. L. c. 278, § 33E (1986 ed.). We affirm the
judgment and decline to reduce the murder verdict under G. L.
c. 278, § 33E.

We summarize the relevant evidence before the jury. The
defendant and his brother, Irving Pitts, rented out a number
of rooms in their house on Hopesill Street in Dorchester. One

---

[1] The defendant also was convicted of unlawfully carrying a firearm. His
appeal raised no issue as to that conviction.

of the defendant's tenants was Dwayne Moody. During July, 1982, Moody and the Pitts brothers had a dispute regarding Moody's failure to pay rent. During the late afternoon of July 17, Moody went to his room and found that his new television set, his lamp, and some of his clothes were missing. Moody argued briefly with the Pitts brothers and their half-brother Pete Broom about the missing items.

Moody left the house and went to a street block party, where a friend informed him that the Pitts brothers and Broom had taken Moody's television and lamp. Moody and his friends, Ernest Alston and Roger Woods, returned to the house on Hopesill Street. At the house, Alston, Woods, and Moody began fighting with the Pitts brothers and Broom. Alston held the defendant from behind, while Moody punched him repeatedly in the face. Woods hit Broom on the side of his head with his pistol and took all of the jewelry that he was wearing. Woods then struck the defendant on the head with his pistol. The defendant fell to the floor unconscious and bleeding.

· Moody, Alston, and Woods returned to the block party, where they met the victim, Aaron Wyatt, and two women. Moody, Alston, Wyatt, and the two women left the block party in Wyatt's automobile to get some pizza. Later, the group headed to a "social club" on Geneva Avenue near the Jeremiah Burke School. They sat in the automobile outside the Burke School, talking and waiting for a friend to arrive. Wyatt sat in the driver's seat, Moody was in the front passenger's seat, and Alston and the two women were in the back seat.

A gray automobile pulled up in front of the victim's automobile. The defendant got out from the back seat of the automobile. He started running toward the victim's automobile. He had a gun in his hand. He fired a shot at the front windshield. The defendant then went to the driver's side of the victim's automobile and shot the victim twice through the open window. The victim died as a "result of [a] gunshot wound of [the] chest and abdomen, with perforations of lungs, aorta, and spleen."

1. *Voluntary manslaughter.* The defendant claims that the judge erred in failing to instruct the jury on manslaughter.[2] " [I]f any view of the evidence will permit a finding that the offense was manslaughter, the judge must charge on manslaughter." *Commonwealth* v. *Garabedian,* 399 Mass. 304, 313 (1987), quoting *Commonwealth* v. *Martinez,* 393 Mass. 612, 613-614 (1985).

"Voluntary 'manslaughter . . . [is] a killing from a sudden transport of passion or heat of blood, upon a reasonable provocation and without malice, or upon sudden combat.' " *Commonwealth* v. *Walden,* 380 Mass. 724, 727 (1980), quoting *Commonwealth* v. *Soaris,* 275 Mass. 291, 299 (1931). "In order for a jury to find that a 'defendant formed an intent to kill in a transport of passion or heat of blood, . . . [t]here must be evidence that would warrant a reasonable doubt that something happened which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, *and that what happened actually did produce such a state of mind in the defendant*' " (emphasis supplied). *Commonwealth* v. *Amaral,* 389 Mass. 184, 188 (1983), quoting *Commonwealth* v. *Walden, supra* at 727-728.

Even if we assume the existence of reasonable provocation in an objective sense, there was no evidence which raised the issue whether, at the time of the shooting, the defendant had the requisite subjective state of mind to require a charge on manslaughter. The defendant did not testify to experiencing anything resembling a "transport of passion" during the killing

---

[2] At trial, the defendant claimed that he was not responsible for Wyatt's death. He testified that his half-brother Broom had killed the victim. On appeal, the defendant does not contest the jury's finding that he fired the fatal shots. We have therefore summarized the evidence in a light most favorable to the defendant, consistent with his having killed the victim. See *Commonwealth* v. *Maskell, ante* 111, 116 (1988); *Commonwealth* v. *Garabedian,* 399 Mass. 304, 314 (1987). Also, we note that the fact that a defendant denies committing the homicide "does not relieve the judge from giving a manslaughter charge, on request, where the evidence would warrant a conviction of that lesser crime." *Commonwealth* v. *Walden,* 380 Mass. 724, 726 (1980).

at the Burke School. Indeed, the defendant expressly disclaimed any desire for revenge.[3] See *Commonwealth* v. *Leate,* 352 Mass. 452, 458 (1967). None of the other witnesses gave "testimony that might warrant an inference that the defendant acted in the heat of passion." *Commonwealth* v. *Walden, supra* at 728. See *Commonwealth* v. *Maskell, ante* 111, 117 (1988). Also, nothing in evidence as to the circumstances of the homicide would warrant a jury's finding that the defendant acted in the heat of passion. The jury may not be permitted to speculate as to whether the defendant, at the time of the shooting, was "roused to the heat of passion." *Commonwealth* v. *Garabedian, supra* at 315, quoting *Commonwealth* v. *Walden, supra. Commonwealth* v. *Wilborne,* 382 Mass. 241, 246 (1981).[4]

Viewing this evidence in a light most favorable to the defendant, *Commonwealth* v. *Maskell, supra* at 116, we hold that there was insufficient evidence presented to require a charge on manslaughter.

2. *Transferred intent.* The defendant claims that, because the Commonwealth failed to prove, beyond a reasonable doubt, the identity of the intended victim, the judge erred in instructing the jury on transferred intent. This contention is without merit.[5]

---

[3] The defendant testified as follows on cross-examination:

THE PROSECUTOR: "And you certainly did not leave there looking for revenge against the people that beat you up?"

THE DEFENDANT: "No."

THE PROSECUTOR: "In no way?"

THE DEFENDANT: "No way."

[4] Because we hold that there was no evidence that the defendant actually experienced a "transport of passion" at the time of the shooting, we need not decide whether there was reasonable provocation in law or whether the thirty-five minutes between the fight and the shooting constituted a cooling-off period which made unnecessary a charge on manslaughter.

[5] Because the defendant did not object to the instruction on transferred intent, we review the instruction to determine whether it created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Andrews, ante* 441, 462 (1988). *Commonwealth* v. *Tavares,* 385 Mass. 140, 149, cert. denied, 457 U.S. 1137 (1982).

The instruction, which is reproduced in full in the margin,[6] correctly stated the law of transferred intent in a form similar to that approved in *Commonwealth* v. *Puleio,* 394 Mass. 101, 109-110 (1985). The evidence presented was sufficient for a jury to find, beyond a reasonable doubt, that the defendant intended to kill either Moody or Alston. Moody had fought with the defendant earlier in the evening, had punched him repeatedly in the face, and was seated next to the victim when the defendant fired the fatal shot. Alston also had fought with the defendant and was seated in the back seat of the victim's automobile at the time of the shooting. The fact that the defendant may have intended to kill either Alston or Moody does not preclude a transferred intent instruction so long as there was sufficient evidence for the jury to find, beyond a reasonable doubt, that the defendant intended to kill one person and, in the course of an attempt to do so, killed another.

3. *Relief pursuant to G. L. c. 278, § 33E.* The defendant requests this court to exercise its power under G. L. c. 278, § 33E, to reduce the verdict from murder in the first degree to murder in the second degree. We decline to do so.

In this case, the defendant left the site of the original encounter, obtained a weapon, searched for his assailants, and

---

[6] "Now, I am going to instruct you now on the issue of transferred intent. If I point a gun at one of my court officers over there, intending to kill him, and when I point that gun, I have to have in my mind the intent to kill him, and by mistake I miss and hit my clerk, I am liable for murder for killing my clerk, because I intended to kill the court officer, but accidentally missed.

"In non-legal terms, that is basically what transferred intent is. It is settled law that if one intends to do a wrongful and unlawful act which is punishable, because it is wrong in itself, and in doing it he inflicts an unforeseen injury, he is criminally liable for that injury. So, it is a familiar rule that if I intend to shoot one person, but I have to have the intent to shoot him initially, and accidentally, I hit [and] injure another, I am liable for murder. So, if without justification, excuse, mitigation, I intend to kill one person and miss and kill another, I can be guilty under a theory of transferred intent. You will see that this indictment says: Did assault and beat [one] Aaron T. Wyatt. So, if you find, and again, it is your determination, but if you find, based upon the evidence, that this defendant set out to kill another, and instead killed Mr. Wyatt, he is guilty of murder as if he originally intended to kill Mr. Wyatt. So, that is what the law means on the issue of transferred intent."

killed one of their companions. In similar circumstances we have declined to exercise our § 33E powers. See *Commonwealth* v. *DeArmas*, 397 Mass. 167, 172 (1986); *Commonwealth* v. *Stillwell*, 366 Mass. 1, 5-6 (1974), cert. denied sub nom. *McAlister* v. *Massachusetts*, 419 U.S. 1115 (1975), and cases cited. Cf. *Commonwealth* v. *Garabedian, supra* at 320 (Liacos, J., concurring in part and dissenting in part).

"The circumstances of the killing . . . do not support a conclusion that the verdict of guilt[y] on the charge of murder in the first degree is against either the law or the evidence in a large or nontechnical sense." *Commonwealth* v. *Davis, ante* 575, 585 (1988).

*Judgments affirmed.*