COMMONWEALTH *vs.* ROBERT A. PATON.

No. 90-P-1522.

Plymouth. September 5, 1991. - October 7, 1991.

Present: BROWN, FINE, & GREENBERG, JJ.

*Assault with Intent to Murder. Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal,* Instructions to jury, Lesser included offense.

At the trial of indictments for armed assault with intent to murder and assault and battery by means of a dangerous weapon, the judge was not required to instruct the jury, on his own motion, on self-defense, where no evidence to support a self-defense argument was presented by either the Commonwealth or the defendant [463-465], nor, on· the evidence presented, was an instruction required on the lesser included offenses of assault with intent to kill or simple assault [465-466].

INDICTMENTS found and returned in the Superior Court Department on July 26, 1988.

The case were tried before *Robert Malcolm Graham,* J.

*Dana A. Curhan* for the defendant.

*Robert C. Thompson,* Assistant District Attorney, for the Commonwealth.

FINE, J. The defendant appeals from judgments of conviction of armed assault with intent to murder and assault and battery by means of a dangerous weapon, contending that the trial judge erred in not instructing the jury, sua sponte, on self-defense and various lesser included offenses. The arguments are made for the first time on appeal. Upon our review of the record of the trial, we conclude that there was no error, let alone any substantial risk of a miscarriage of justice, and, therefore, we affirm the judgments.

We describe the evidence in some detail as the basis for our analysis of the defendant's contentions about the sufficiency of the judge's instructions.

The Commonwealth's case was presented primarily through the testimony of the victim, Ronald Pomella. Pomella was a marine mechanic who worked as a subcontractor at a Marshfield marina; the defendant was the owner of a boat kept at that marina. The defendant had become annoyed as a result of delays in the repair of his boat, and Pomella had become irritated by the defendant's repeated inquiries about the progress of the work. Nevertheless, Pomella described the relationship between the two before the night of the incident as friendly.

At around 10 P.M. on January 3, 1988, Pomella and his wife went to a restaurant located adjacent to the marina. The defendant was also there, and a minor incident soon caused antagonism to develop between the defendant and Pomella. At one point, the defendant grabbed Pomella by the shoulder, threatened him, and, using aggressive language, tried to start a fight. After a while, the defendant left. He telephoned Pomella at the restaurant, however, telling Pomella to come outside and fight because he wanted to kill him. Pomella refused.

At around 1:00 A.M., Pomella and his wife left the restaurant and drove home. As they pulled into their driveway, the defendant's car pulled in behind them. The defendant alighted from his vehicle and invited Pomella to fight. The defendant said, "C'mon, let's go. I'm going to kill you." Pomella agreed to fight, but said he first had to go to the bathroom inside the house. Pomella's wife, remaining outside, tried to persuade the defendant to leave. She saw the defendant retrieve an object from his car and place it "down the back of his pants." Becoming nervous, she tried to enter the house, but the defendant "slammed" the storm door on her fingers. As she was screaming, the defendant stepped inside the house. Pomella pushed and punched the defendant in an effort to get him out. Pomella was still pushing the defendant away from the house when he saw the defendant's right hand being thrust towards his (Pomella's) chest. Pomella tried to knock the defendant's hand out of the way with his own left hand. Immediately, he felt pain in his left

arm, unaware at that moment that he had received two stab wounds. Pomella then ran around the house and hid in his truck for safety. Still shouting that he wanted to "finish [Pomella] off," the defendant went to his car and drove away.

Mrs. Pomella called the police, who soon arrived at the scene. While the police were attending to Pomella's wounds, the defendant called Pomella on the telephone and asked Pomella to meet him at the marina. The defendant excitedly told Pomella that he still wanted to kill him and "finish him off."

The defendant's case consisted of the testimony of two witnesses, his mother and her friend, Maureen Delamano. The defendant's mother testified that on the evening of the incident she and Mrs. Delamano dined together at a restaurant in Scituate and then drove together in the mother's car to her house for tea, leaving Mrs. Delamano's car at the restaurant. The defendant arrived at his mother's home at approximately 12:45 A.M. and agreed to take Mrs. Delamano to her car. According to Mrs. Delamano, they drove first to the marina to look at the defendant's boat. They met Pomella there. After a conversation about the boat repairs, Pomella invited the defendant to follow him to his home so they could talk further. When the defendant and Mrs. Delamano arrived at the Pomellas' house, the defendant got out of the car and walked over to the Pomellas. Mrs. Delamano remained in the car. She testified that she saw Pomella go in the house, then leap out the door, lunging at the defendant. Mrs. Pomella was in between the defendant and Pomella, according to Mrs. Delamano, and Pomella had a metal object in his hand which looked like a wrench. It seemed to her there was going to be a scuffle. She testified that the defendant had no weapon and that he backed off, returned to his car, and drove away. Mrs. Delamano further testified that, as they were leaving, she saw two people in a scuffle on the lawn, one or both of whom were down in the snow. The defendant then drove her to her car. During the course of the ride, she urged him to call the police.

Defense counsel's closing argument focused on inconsistencies between Pomella's grand jury and trial testimony and other weaknesses affecting the credibility of the Commonwealth's case. Self-defense was not mentioned. The only reference to possible aggressiveness on the part of Pomella during the critical period was as follows: "You heard testimony that it was not [the defendant] that used the knife, that it was Mr. Pomella that thrust at [the defendant]."

The judge's instructions, although briefly mentioning self-defense, failed to explain the relevant law or state that the Commonwealth would have the burden of proving its absence. The jurors were not given the option of finding any lesser included offenses on either indictment. Defense counsel raised no question about the accuracy or sufficiency of any of the instructions except for one point. He requested an instruction on simple assault and battery as a lesser included offense within the offense of assault and battery by means of a dangerous weapon on the theory that the jury might find guilt based upon the incident at the restaurant. As the judge ruled, however, and as the defendant concedes on appeal, the restaurant incident was not the subject of the indictment and could not be a basis for a jury verdict.

1. *Self-defense.* A criminal defendant is entitled to an instruction on the law relating to self-defense including the Commonwealth's burden of proof on the issue if the evidence, viewed in the light most favorable to the defendant, sufficiently raises the issue. See *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980); *Commonwealth* v. *Burbank*, 388 Mass. 789, 794 (1983); *Commonwealth* v. *Glass*, 401 Mass. 799, 808 (1988); *Commonwealth* v. *Blake*, 409 Mass. 146, 158 (1991). "There must be evidence warranting at least a reasonable doubt that the defendant: (1) had reasonable ground to believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force, and (3) used no more force than was reasonably necessary in all the circumstances of the case.

*Commonwealth* v. *Harris*, 376 Mass. 201, 208 (1978), and cases cited." *Commonwealth* v. *Harrington*, 379 Mass. at 450. Even without a defense request, failure to give a proper instruction on self-defense may, in certain circumstances, be error. See *id.* at 453-454; *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 748, 751 (1980). However, a judge is not required to charge on self-defense, either upon request or on his own motion, where a jury would be left to speculate on a hypothesis not supported by the evidence. See *Commonwealth* v. *Lacasse*, 365 Mass. 271, 273-274 (1974); *Commonwealth* v. *Walden*, 380 Mass. 724, 729 (1980).

No evidence was presented by the Commonwealth or the defendant that he used the knife because he felt threatened by Pomella, and no such self-defense argument was made by defense counsel. The Commonwealth's evidence was consistent that the defendant was the aggressor throughout the pursuit, home invasion, and stabbing, and that he was intent upon killing or doing serious bodily harm to Pomella. If the defendant's only eyewitness, Mrs. Delamano, were to be believed, the defendant, although invited to Pomella's home, did not have or use a knife, and he backed away safely when Pomella lunged and produced a weapon. Her testimony further suggested that Pomella could have been stabbed as he was engaged in a scuffle with some other person on the lawn while she and the defendant were driving away.

It is true that on some strained view, the Commonwealth's and the defendant's evidence, considered in combination, might suggest that Pomella's conduct was threatening and the defendant acted in self-defense. For example, the jury might have believed the Commonwealth's witnesses that the defendant had the knife but assumed that he used it only when Pomella lunged at him with some object and caused him to feel threatened with imminent serious harm. Alternatively, they might have assumed that the object Mrs. Delamano saw in Pomella's hand was a knife and that the defendant grabbed it and used it to protect himself. For the jury to reach such a conclusion, however, would have required them to engage in speculation, and jurors are not per-

mitted to speculate. See *Commonwealth* v. *DeArmas*, 397 Mass. 167, 171 (1986); *Commonwealth* v. *Davis*, 403 Mass. 575, 583 (1988). See also *Commonwealth* v. *Walden*, 380 Mass. at 728.

In these circumstances, we do not think the judge was required, at least on his own motion, to charge the jury on self-defense. The defendant's obvious trial strategy was to attempt to discredit the Commonwealth's case and offer a variant version of the incident. In accordance with the defendant's version, he did not stab Pomella. That version negated self-defense. Indeed, given the defendant's evidence, he might well have thought a self-defense charge would have had an adverse effect on the jury. See *Commonwealth* v. *Mains*, 374 Mass. 733, 735-736 (1978). We need not relieve the defendant of the results of his own trial tactics.[1] *Id.* at 736.

2. *Lesser included offenses.* The defendant contends that the judge should have instructed the jury that they could consider armed assault with intent to kill as a lesser included offense within the charge of armed assault with intent to murder. Such an instruction would have been warranted had there been evidence that the defendant acted without malice, that is, out of "the frailty of human nature, as in instances of sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense." *Commonwealth* v. *Nardone*, 406 Mass. 123, 130-131 (1989). Even assuming a lesser included offense instruction might, in some circumstances, be required in the absence of a defense request, see *Commonwealth* v. *Yunggebauer*, 23 Mass. App. Ct. 46, 52 (1986), the evidence in this case did not require it. Although

---

[1] "A lawyer cannot try a case on one theory and then, having lost on that theory, argue before an appellate court about alleged issues which might have been, but were not, raised at the trial. That is true whether or not the trial lawyer and the appellate lawyer are the same person, and whether or not they are in any way associated. The appeal must be based on what took place at the trial, not on anything which is presented for the first time before an appellate court. *Commonwealth* v. *Johnson*, 399 Mass. 14, 15 (1987), and cases cited." *Commonwealth* v. *Olson*, 24 Mass. App. Ct. 539, 544 (1987).

there was some testimony that Pomella lunged at the defendant with a weapon in his hand, the case was tried by the defendant on the theory that he did not use a knife and that, once the weapon was produced by Pomella, the defendant backed away. Thus, just as with the failure to request an instruction on self-defense, the failure to request an instruction on assault with intent to kill was consistent with the theory on which the case was tried. On that theory, the defendant would have been entitled to a not guilty verdict. Failure to request the lesser included offense instruction, therefore, had tactical advantages. Having lost the case using that strategy, the defendant may not claim the failure to give the instruction as error on appeal.

Finally, the defendant claims it was reversible error for the judge not to instruct the jury that they could find the defendant guilty of simple assault on the indictment charging armed assault with intent to murder, or simple assault and assault and battery on the indictment charging assault and battery by means of a dangerous weapon. With the benefit of hindsight, the defendant now contends that the jury might have disbelieved the evidence that he stabbed Pomella with the knife but, nevertheless, believed that he committed an unarmed assault on Pomella in the course of the incident. The case presented to the jury, however, was about the stabbing. Had the jury disbelieved the stabbing evidence, the defendant would have been entitled to a not guilty verdict. It is virtually impossible that such lesser included offense instructions would have been viewed by the defendant, before the jury reached their verdict, as beneficial to his case or likely to affect the result.[2]

*Judgments affirmed.*

---

[2]The defendant suggests in two footnotes, in a form so abbreviated that we are not compelled to consider them, that trial counsel's failure to request instructions on self-defense and certain lesser included offenses constituted ineffective assistance of counsel. We discern no basis for reversal on that ground for the reason, if no other, that those failures were consistent with counsel's obvious and not unreasonable trial strategy.