After a jury trial in 1998, the defendant was convicted of the second degree murder of Gregory Tillery, armed assault with the intent to murder Sakoya Willis, and unlawful possession of a firearm. A codefendant, Kenneth Mattox, indicted for the same crimes, was acquitted of all charges. The defendant's convictions were affirmed on direct appeal. See Commonwealth v. Clements, 51 Mass. App. Ct. 508 (2001), S.C., 436 Mass. 190 (2002).
In 2016, the defendant filed a motion for postconviction relief under Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995),[1] and Mass. R. Crim. P. 30 (a) & (b), as appearing in 435 Mass. 1501 (2001). The motion judge denied rule 30 (a) relief, but under rule 30 (b) ordered the defendant to be resentenced in light of Miller v. Alabama, 567 U.S. 460 (2012) ; Commonwealth v. Costa, 472 Mass. 139 (2015) ; and Commonwealth v. Okoro, 471 Mass. 51 (2015). The motion judge did not expressly address the rule 25 (b) (2) request to reduce his murder conviction to manslaughter, which the parties properly treat as a denial of that request. See Commonwealth v. Dubois, 451 Mass. 20, 29 (2008). In this appeal, the defendant claims it was an abuse of discretion for the judge to have denied that relief.[2] We affirm.
A judge presented with a rule 25 (b) (2) motion "has broad authority to reduce a jury's verdict, despite the presence of legally sufficient evidence to support it ... 'where the weight of the evidence ... points to a lesser crime.' " Commonwealth v. Grassie, 476 Mass. 202, 214 (2017), quoting Commonwealth v. Rolon, 438 Mass. 808, 821 (2003). The purpose of the rule is "to ensure that the result in every criminal case is consonant with justice." Commonwealth v. Woodward, 427 Mass. 659, 666 (1998). But the power is to be used "sparingly." Id. at 667. "[T]he judge is not to sit as a 'second jury.' " Commonwealth v. Chhim, 447 Mass. 370, 381 (2006), quoting Commonwealth v. Keough, 385 Mass. 314, 321 (1982). "[T]o justify a reduction in the verdict, there must be some weakness in the critical evidence ... or some weakness in the evidence coupled with trial error." Commonwealth v. Lyons, 444 Mass. 289, 292 (2005).
Here, the defendant claims that the motion judge should have reduced the murder verdict to manslaughter based on (1) the weakness of the evidence of joint venture; (2) inconsistent verdicts; (3) the judge's refusal to instruct the jury on manslaughter; and (4) the defendant's age at the time he committed the murder. We disagree and discuss each claim in turn.
1. The evidence of joint venture. The defendant claims that the evidence was weak that he shared with the principal the necessary intent to commit the murder. As a starting point, on direct appeal we observed that "the evidence against the defendant was considerably stronger and more persuasive than it was with regard to [Mattox]" (citation omitted). Clements, 51 Mass. App. Ct. at 523. Furthermore, there was ample evidence that the defendant had cooperated with an accomplice, whether it was Mattox or another, to kill the victim. The ammunition found at the scene disclosed that two different guns -- a .380 caliber and a nine millimeter -- were employed in the shootings. Two live .380 shells were cycled through a gun but not fired, which supported the eyewitness's claim that the defendant's gun jammed. However, the evident murder weapon was the nine millimeter gun, which was consistent with the five discharged nine millimeter shell casings that corresponded to the victim's five entry and exit wounds. In addition, the defendant was seen running from the scene of the murder with another person. Thus, the evidence that the defendant cooperated with the principal and shared the necessary intent for the murder was far from weak. See Commonwealth v. Akara, 465 Mass. 245, 255 (2013) ; Commonwealth v. Blake, 428 Mass. 57, 63-64 (1998).
2. Inconsistent verdicts. The defendant further claims there is a "serious question" about the murder verdict where he was convicted as a joint venturer and his codefendant, Mattox, was acquitted of the same charges in the same trial. Again, this is not uncharted territory. As we said on direct appeal, "We also reject the defendant's claim that the verdict of acquittal of Mattox and the verdict of guilty as to the defendant on the theory of joint venture are inconsistent verdicts which require reversal of the defendant's conviction of second degree murder. Each defendant was tried both on the theory of individual liability and joint venture." Clements, 51 Mass. App. Ct. at 523.
Contrary to the defendant's claim, Mattox's acquittal does not call into question the justice of the defendant's conviction because while Willis's testimony, admitted substantively, identified the defendant as one of the shooters, it did not do the same as to Mattox. Mattox's acquittal does not illustrate a weakness in the critical evidence against the defendant as a joint venturer. At best, and ignoring the lack of direct evidence that Mattox was one of the shooters, the verdicts are factually inconsistent, which neither provides grounds for relief nor illustrates any weakness in the verdict. See Commonwealth v. Medeiros, 456 Mass. 52, 57-58 (2010).
3. Lack of a manslaughter instruction. The defendant further claims that his murder verdict should be reduced to manslaughter because the judge erroneously declined to instruct on voluntary manslaughter where the evidence justified such an instruction based on reasonable provocation in the form of sudden combat.[3] We disagree.
As the trial judge noted when she declined to instruct on manslaughter, the evidence adduced at trial, even when viewed in the light most favorable to the defendant, did not support a voluntary manslaughter instruction. See Commonwealth v. Nichypor, 419 Mass. 209, 216 (1994).
The defendant attempts to construct the foundation for a manslaughter instruction from Anthony Owens, who testified on behalf of the defense at trial. According to Owens, at approximately 6 P.M., i.e., the time of the shooting, from his vantage point on Harvard Street, he saw a crowd of ten to twenty people within which two individuals were arguing, yelling, and swearing. He saw punches thrown and heard someone get hit. Less than a minute later, he heard a "couple of pops," someone yelled "fire," an indication that a shooting was occurring, and he ran away. Owens never saw the faces of the two involved in the fight. He could not say whether they were tall or short, fat or thin, black or white, or describe their clothing. Nor did he see a gun.
As the trial judge noted at the time, because Owens could not identify who was in the fight, his testimony failed to provide a basis for a manslaughter instruction. Despite this, the defendant claims that it can be inferred from the circumstances that the fighters were Mattox and the victim, justifying the instruction. We disagree. The defendant's claim amounts to mere speculation or a hypothesis, neither of which is sufficient grounds for the instruction. See Commonwealth v. Groome, 435 Mass. 201, 220 (2001) ; Commonwealth v. DeArmas, 397 Mass. 167, 171 (1986). The judge did not err in declining to give an instruction on manslaughter.
4. The defendant's age. Finally, the defendant claims that based on now-known advances in science regarding juvenile brain development and because he was seventeen at the time of the murder, reducing his verdict to manslaughter is more consonant with justice. We disagree.
The defendant claims that scientific developments regarding differences in juvenile brains as compared to adult brains provides a ground to reduce his murder conviction to manslaughter. While the United States Supreme Court and our Supreme Judicial Court have acknowledged that "children are constitutionally different from adults for purposes of sentencing," Miller, 567 U.S. at 471 ; see Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 659-660 (2013), neither has said that children are incapable of formulating the necessary intent to support a murder conviction. See Commonwealth v. Brown, 474 Mass. 576, 590 n.7 (2016) (Miller focused on sentencing and punishment of juveniles; the "Court did not discuss case law or statutory law addressing intent, knowledge, or deliberate premeditation as elements of a crime"). See also Commonwealth v. Ogden O., 448 Mass. 798, 804 (2007) (although children may not fully appreciate the consequences of wrongful actions, "that does not mean that a delinquent child lacks the ability to formulate the specific intent to commit particular wrongful acts"). In fact, in Okoro, 471 Mass. at 65-66, the Supreme Judicial Court held that the judge correctly excluded evidence that it was impossible for a juvenile to formulate the requisite intent to commit murder. Rather, whether a juvenile can form the necessary intent is a question of fact. Id. The defendant's parole eligible life sentence is not unconstitutional, see ibr.US_Case_Law.Schema.Case_Body:v1">id. at 58, and his youth, absent a weakness in the evidence coupled with another trial error, standing alone, is not a justification to reduce his murder conviction to manslaughter. See Rolon, 438 Mass. at 825.
So much of the order dated May 8, 2017, as denied the request to reduce the verdicts pursuant to Mass. R. Crim. P. 25 (b) (2) is affirmed.

In 1998, the trial judge denied the defendant's first postverdict rule 25 (b) (2) motion, which sought required findings. In his 2016 motion, the defendant limited his requested rule 25 relief to verdict reductions.

Although the defendant's motion also sought to reduce his armed assault with intent to murder verdict to assault with intent to kill, the defendant does not challenge the denial of that relief on appeal. The motion judge's rulings under rule 30 are also not before us.

"For sudden combat to be the basis for a voluntary manslaughter instruction, '[t]here must be evidence that would warrant a reasonable doubt that something happened which would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint, and that what happened actually did produce such a state of mind in the defendant.' " Commonwealth v. Curtis, 417 Mass. 619, 629 (1994), quoting Commonwealth v. Walden, 380 Mass. 724, 728 (1980). However, for sudden combat, "the 'victim ... must attack the defendant or at least strike a blow against the defendant.' " Commonwealth v. Espada, 450 Mass. 687, 696-697 (2008), quoting Commonwealth v. Pasteur, 66 Mass. App. Ct. 812, 822 (2006).